JOHN L. PIAZZA II
Pro Se
Southern Cathodic Protection Company
1100 Johnson Ferry Rd.
Suite 108
Atlanta, GA 30342
(404)252-4649

FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

JUL 11 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

-CAM

DISTRICT OF NORTHERN GEORGIA

ALLTRISTA ZINC PRODUCTS, L.P., )
et al., )
 )
 )
vs. )
 )
 )
 )
VECTOR CORROSION )
TECHNOLOGIES, INC., et al. )
 )
 )
_____ )

1 05-MI-0194

Case Number: 4:04-CV-487
-WS/WCS

Pending in the Northern
District of Florida

MOTION TO QUASH SUBPOENA,
OR IN THE ALTERNATIVE,
MODIFY SUBPOENA

John L. Piazza II , Pro Se, moves to quash, or in the
alternative, modify the subpoena served on him for the production
of documents and objects issued by the United States District
Court, District of Northern Georgia on June 27, 2005.

**STATEMENT OF FACTS**

On or about June 27, 2005, a subpoena issued by this Court was
served upon John L. Piazza II (hereafter, "moving party"). The
subpoena commanded the moving party to produce and permit
inspection and copying of various documents and objects on July 13,
2005 at the law offices of the Defendant's attorney (See exhibit
A).

**LEGAL ARGUMENT**

**I.   THE SUBPOENA FAILS TO ALLOW REASONABLE TIME FOR COMPLIANCE.**

Rule 45 of the Federal Rules of Civil Procedure, Subsection C(3)(A)(i) states that,

> "On timely motion, the court by which a subpoena issued shall quash or modify the subpoena if it
>
> (i) fails to allow reasonable time for compliance."

In this case, the subpoena was served on or about June 27, 2005. Compliance was ordered by July 13, 2005.   Defendant's subpoena makes 66 specific requests.   The documentation requested could comprise a time period of almost 2 years.   Furthermore, this documentation is not specifically segregated, and would require extensive time to locate and separate from other business documents.   In addition to the difficulties involved in locating the requested documentation, the nature of business in which the moving party is involved requires frequent out-of-state travel. Accordingly, the date of compliance of the subpoena is not reasonable.   The moving party requests that this Court quash the subpoena of June 27, 2005, or, in the alternative, modify the subpoena to allow adequate time to comply with its many conditions. The moving party estimates that a reasonable period of time would be a minimum of 60 days.

2

## II.   THE SUBPOENA REQUESTS DISCLOSURE OF INFORMATION THAT MAY INCLUDE TRADE SECRETS AND COMMERCIAL INFORMATION.

The June 27, 2005 subpoena issued by this Court requests information of a commercial nature.   Some of the information requested may constitute trade secrets or commercial information under Federal Rule Of Civil Procedure Rule 45(C)(3)(B)(i).   As such, the moving party requests the Court to modify the subpoena so as to not require the disclosure of any information constituting "trade secrets" or "commercial information" under Rule 45.

**CONCLUSION.**

The Defendant's subpoena issued by this Court on June 27, 2005, requires extensive disclosure to be completed within a very short time period.   Under Rule 45 of the Federal Rules of Criminal Procedure, the request fails to allow reasonable time for compliance.   This is especially relevant in this case, as the moving party is not a party to the civil action originally brought in the Northern District of Florida. As such, the moving party had no advance notice of the sort of disclosure requirements that he would be subjected to.   Since the subpoena does not allow reasonable time for compliance, the moving party requests this court quash the subpoena, or, in the alternative, modify the subpoena to allow adequate compliance with all 66 of its requests.

In addition, Defendant's subpoena may request the disclosure

3

of trade secrets or other commercial information.  As such, the subpoena should be modified to specifically exclude any such information.

RESPECTFULLY SUBMITTED this 11th day of July, 2005.

By _____
     John L. Piazza II

Copy mailed/delivered this
11th day of July, 2005 to:

Donald R. Andersen, Esq.
Attorney for the Defendant
Stites & Harbison, PLLC.
303 Peachtree Street, N.E.
2800 Sun Trust Plaza
Atlanta, GA 30308

4

# Exhibit A

## Documents To Be Produced Pursuant To Subpoena Issued To Southern Cathodic Protection, Inc.

1.      All documents that refer or relate to the formation and/or terms of any

distribution agreement between Alltrista and SCPI, including, without limitation,

- 4 -

2058LT:20176:107532:2:ATLANTA

correspondence, communications, agreements, contracts, and drafts of agreements or contracts.

2.      All documents that relate to the termination of the prior "distributorship agreement" between Alltrista and VCTL.

3.      All documents that refer or relate to the employment of Douglas L. Leng.

4.      All documents provided to customers with any "Lifejacket®" system including, without limitation, specifications, proposals, quotations, pricing, invoices, user's manuals, operator's manuals, service manuals, packing slips, descriptions of the product, and/or any instructions on the operation of the product.

5.      All documents that refer or relate to whether any Vector product infringes the '045 Patent, including, without limitation, legal or technical opinions, claim charts, laboratory notebooks, e-mail, correspondence, memoranda, communications, or other documents comparing any Vector products to the '045 patent.

6.      All documents that refer or relate to sales and/or offers for sale by or for Alltrista of its "Lifejacket®" product, and/or any product within the scope of any of the claims of the '045 Patent prior to March 24, 1994, including, without limitation, news or press releases,  correspondence, communications, notes, memoranda, contracts, agreements, purchase orders, invoices, proposals, reports, studies, data compilations, estimates, or evaluations.

- 5 -

7.    All documents that refer or relate to the conception of the "inventions" claimed in the '045 Patent including, without limitation, documents that refer or relate to the identity of any of the inventors of the subject matter claimed in the '045 Patent, inventors' notebooks, and communications between inventors and others regarding the invention.

8.    All documents that refer or relate to the conception or actual reduction to practice, if any, of the subject matter of the claims of the '045 patent.

9.    All documents that establish the date of conception or the date of actual reduction to practice, if any, of the subject matter of the claims of the '045 patent.

10.    All United States and foreign patents or patent applications, whether filed, abandoned, published or unpublished, of which Alltrista or SCPI is aware that relate in any manner to equipment and/or methods (including components thereof) for corrosion protection of metallic structures or metallic-reinforced concrete structures or objects, including, without limitation, bridges or roadways.

11.    All documents that refer or relate to any effort by or for Alltrista or SCPI to view, examine, inspect, analyze, test, disassemble, and/or reverse engineer any feature, component, and/or design of any Vector product.

12.    All documents that refer or relate to Vector or Defendants.

13.    All documents that refer or relate to Lifejacket.

- 6 -

14.    All documents that refer or relate to galvanic corrosion protection jackets.

15.    All documents that refer or relate to a jacketed sacrificial anode system for the protection of structures located in water prior to March 24, 1994.

16.    All documents that refer or relate to a jacketed sacrificial anode system for the protection of structures located in water subsequent to March 24, 1994.

17.    All documents that refer or relate to the same field of technology as the '045 patent.

18.    All documents that refer or relate to corrosion protection of metallic structures or metallic-reinforced concrete structures or objects, including, without limitation, bridges or roadways.

19.    All documents that refer or relate to a decrease in sales by or market share of Alltrista or SCPI since Vector began marketing and selling its "Vector Galvanode" or "Vector Jacket" product, including, but not limited to, reports, correspondence, communications, notes, and memoranda.

20.    All documents that reflect, refer, or relate to any sales or offers to sell by Defendants of products that infringe the '045 Patent, including, but not limited to, correspondence, communications, memoranda, notes, contracts, agreements, proposals, and/or invoices.

- 7 -

21.     All documents that refer or relate to any communication with the U.S. Patent and Trademark Office regarding the '045 Patent, including, but not limited to, responses to office actions, petitions, requests, correspondence, memoranda or notes of telephone or personal communications or conferences, drafts of documents, interview notes, recordings, conversations, or correspondence with any person, or any research, investigation, and/or preparation for or evaluation of any response to the U.S. Patent and Trademark Office.

22.     All documents that refer or relate to limiting or preventing sales of any corrosion protection products by asserting the '045 Patent, including, but not limited to, correspondence, communications, memoranda, e-mail, notes, contracts, proposals, or bid specifications or requirements, and further including, but not limited to, any threats of infringement actions, notice of patent rights, or other references to patent protection for corrosion protection products under the '045 patent.

23.     All documents that refer or relate to Defendants' products being superior, equivalent, inferior or otherwise comparing Defendants' products to the products of Alltrista or SCPI covered by the "Lifejacket®" trademark, including, but not limited to, correspondence, communications, memoranda, e-mail, notes, and/or reports.

24.     All documents that refer or relate to any opinion, analysis, investigation, or study of the validity, enforceability, or infringement of the '045 Patent.

25.     All documents that refer or relate to the scope, interpretation, validity, unenforceability, infringement, or non-infringement of the '045 Patent.

26.     All documents that refer or relate to the interpretation or meaning of any element of claims 1, 14, or 16 of the '045 Patent.

27.     All documents that refer or relate to any product that has been studied, investigated, or analyzed by or on behalf of the SCPI for the purpose of determining whether such product was covered by claims 1, 14, or 16 of the '045 Patent.

28.     To the extent not already produced, produce all documents and things that refer or relate to any Galvanic Jacket for Cathodic Protection System, including, but not limited to, the structure, function, design, development, manufacture, installation, and/or operation of the Lifejacket manufactured, sold, offered for sale, or used by Plaintiffs.

29.     To the extent not already produced, produce all documents that refer or relate to any Galvanic Jacket for Cathodic Protection System that has been manufactured, used, sold and/or offered for sale by Plaintiffs or Defendants.

30.     To the extent not already produced, produce all documents that refer or relate to any communications between Plaintiffs and/or their agents, employees, distributors and any other person concerning or referring or relating to the present lawsuit and/or Defendants', Plaintiffs', or SCPI's manufacture, use, sale, and /or offer for sale of any Galvanic Jacket for Cathodic Protection System.

- 9 -

31.     To the extent not already produced, produce all documents concerning the advertising, promotion and/or marketing of any Galvanic Jacket for Cathodic Protection System.

32.     To the extent not already produced, produce all documents and things that refer or relate to any communications with anyone, including, but not limited to, customers or potential customers, concerning the sale, offer for sale, operation, or function of any Galvanic Jacket for Cathodic Protections System.

33.     To the extent not already produced, produce all documents and things that refer or relate to use or operation of a Galvanic Jacket for Cathodic Protection System, including, but not limited to, all manuals, training materials, and instructions.

34.     To the extent not already produced, produce samples of all product brochures, price lists, order forms, inventory sheets, catalogs, and other documents or things, such as video tapes or commercials that illustrate, list or describe any Galvanic Jacket for Cathodic Protection System manufactured, used, sold or offered for sale, including, but not limited to, those manufactured, used, sold, or offered for sale by Plaintiffs or Defendants.

35.     To the extent not already produced, produce all drawings, samples, and/or prototypes of any Galvanic Jacket for Cathodic Protection System, including, but not limited to, those manufactured, used, sold, or offered for sale by Plaintiffs or Defendants.

- 10 -

36.     To the extent not already produced, produce all documents that refer or relate to the design, development, and testing of any Galvanic Jacket for Cathodic Protection System.

37.     Produce all documents concerning or related to the Canaveral Port Authority North Cargo Pier Repairs Project, FM No. 4108981904.

38.     To the extent not already produced, produce all documents that refer or relate to communications with Vortex Marine Construction, Inc., or any of its employees, agents, subcontractors or vendors.

39.     Produce all documents that refer or relate to the NASA Jay-Jay Railroad Bridge over the Indian River Inter Coastal Waterway Kennedy Space Center Florida Project.

40.     Produce all documents that refer or relate to the existence of any actual confusion or likelihood of confusion as to the source of any Galvanic Jacket for Cathodic Protections System that has been sold or offered for sale by Defendants.

41.     Produce all documents concerning written policies, procedures, and guidelines related to SCPI's computers, computer system, electronic data, and electronic media including, but not limited to, the following:

        a.   Backup tape rotation schedules;
        b.   Electronic data retention, preservation, and destruction schedules;
        c.   Employee use policies of company computers, data, and other technology;

- 11 -

    d.    File naming conventions and standards;

    e.    Password, encryption, and other security protocols;

    f.    Diskette, CD, DVD, and other removable medial labeling standards;

    g.    E-mail storage conventions (e.g., limitations on mailbox sizes/storage locations; schedule and logs for storage);

    h.    Electronic media deployment, allocation, and maintenance procedures for new employees, current employees, or departed employees; and

    i.    Software and hardware upgrades (including patches) for January 2003 through May 2005 (who and what organization conducted such upgrades).

42.    Produce organization charts for all SCPI information technology or information services departments or divisions from January 2003 through May 2005.

43.    Produce backup tapes containing e-mail and other electronic data related to any issue relevant to this action from January 2003 through May 2005.

44.    Produce exact copies (i.e., bit-by-bit copies) of all files on the SCPI network server and all hard drives on the desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, and other electronic media related to this action from January 2003 through May 2005, including, but not limited to, exact copies of the hard drives on computers used by Doug Leng and any person involved in the design, development, testing, evaluation, study, manufacture, marketing, sale or offer to sell, or use of any Galvanic Corrosion Protection System, or in the initiation, preparation, filing, review, and investigation of any aspect of this action.

45.    Produce exact copies of all relevant disks, CDs, DVDs, and other removable media related to this action from January 2003 through May 2005.

46.     Produce organization charts for any entity, group, division, subsidiary, or department involved since January 2003 with the design, development, sales, or marketing of any Galvanic Jacket for Cathodic Protection System.

47.     Produce all documents that refer or relate to assignments, licenses or agreements of any kind to which either SCPI or Doug Leng are a party for technology in the general field of Galvanic Corrosion Protection Systems and components.

48.     Produce all documents that refer or relate to any patent applications seeking to protect any features of any Galvanic Corrosion Protection Systems or components.

49.     Produce all documents that refer or relate to any prior art known to SCPI, which pertain to the field of technology of the '045 Patent.

50.     Produce all prior art that refutes or is relevant to any claim of validity of the '045 Patent or that supports or is relevant to any claim of invalidity of the '045 Patent.

51.     To the extent not already produced, produce all documents and things that refer or relate to any product that you contend infringe or contribute to the infringement of the '045 Patent, or any activity that you contend induces infringement of the '045 Patent.

52.     To the extent not already produced, produce all documents and things that refer or relate to any investigation, evaluation, study, and/or opinion relating to any infringement of the '045 patent by any offer to sell, sale, manufacture or use of any of

- 13 -

Defendants' products, or any activity that you contend induces infringement of the '045 patent.

53.    To the extent not already produced, produce all documents and things that refer or relate to any contact or communication with any person or entity (including, without limitation, Defendants' past or present employees and past, present, or potential customers, subcontractors, vendors, and/or others doing business directly or indirectly with Defendants or with Defendants' past, present, or potential customers, subcontractors or vendors), who have been contacted by Alltrista, Florida DOT, SPCI, or by any other person regarding any alleged direct, contributory or inducement to infringement of the '045 patent or infringement of the Lifejacket trademark, any other act of alleged false advertising or unfair competition, or in any other way related in any manner to any aspect of the subject matter of this action (including, without limitation, any discussion of this action, any threats of infringement or notice of the '045 Patent or the Lifejacket trademark, or threats to join such persons or entities in this action or to pursue any other legal action, including, without limitation, any proceedings to obtain an injunction against such person or entity), including, but not limited to, Douglas L. Leng's letter of January 27, 2005 to Mr. Mark Blake at Canaveral Port Authority.

54.    Produce any documents that refer or relate to any research or design projects, studies, analyses, or other forms of investigation conducted by you relating to Galvanic Corrosion Protection Systems or components thereof, including, but not limited to, any of the projects described in the Interim Report of the Florida Department of

- 14 -

Transportation Corrosion Laboratory Interim Report entitled "Field Performance History of Sacrificial Cathodic Protection Pile Jacket System," dated June 2000, Project Engineer Ivan R. Lasa; Richard J. Kessler et al., "Cathodic Protection Using Scrap and Recycled Materials," Materials Performance, Vol. 30, No. 6, National Association of Corrosion Engineers, June 1991, and Richard J. Kessler, et al., Corrosion/91, Pages No. 555, "Cathodic Protection Using Scrap and Recycled Materials," NACE Annual Conference and Corrosion Show, 3/11-15/1991.

55.     Produce any documents that support any contention that the anode is fully encapsulated by concrete or other cementitious material in any of the designs or installations that are the subject of any research or design projects, studies, analyses, or other forms of investigation conducted by or for Florida DOT relating to Galvanic Corrosion Protection Systems or components thereof, including, but not limited to, any of the projects described in the Interim Report of the Florida Department of Transportation Corrosion Laboratory Interim Report entitled "Field Performance History of Sacrificial Cathodic Protection Pile Jacket System," dated June 2000, Project Engineer Ivan R. Lasa; Richard J. Kessler et al., "Cathodic Protection Using Scrap and Recycled Materials," Materials Performance, Vol. 30, No. 6, National Association of Corrosion Engineers, June 1991, and Richard J. Kessler, et al., Corrosion/91, Pages No. 555, "Cathodic Protection Using Scrap and Recycled Materials," NACE Annual Conference and Corrosion Show, 3/11-15/1991, (including, without limitation, any descriptions or photographs depicting the surface of any structure involved in such projects, studies,

analyses, or investigations, following removal, wholly or in part, of any jacket that had been placed around any such structure).

56.     Produce any documents that support any contention that the anode is not fully encapsulated by concrete or other cementitious material in the installation of any of Defendants' (including, without limitation, any descriptions or photographs depicting the surface of any structure around which the anode in any of Defendants' products identified by Plaintiff in response to Interrogatory No. 1, had been installed, following removal, wholly or in part, of any jacket that had been placed around any such structure).

57.     To the extent not already produced, produce all documents that refer or relate to any tests or any data observation, measurement, recording or collection from any projects that have used a Galvanic Jacket Corrosion Protection system, reflecting the performance of such system at different elevations (including, without limitation, below tide, tide zone, above high tide and near the top of the jacket).

58.     To the extent not already produced, produce any documents that refer or relate to any assignments, licenses or agreements for the manufacture, sale, use or distribution of Alltrista's Lifejacket system, or that refer to or relate to the '045 Patent.

59.     To the extent not already produced, produce any documents that refer or relate to any communications with Florida DOT or with Alltrista or any person or entity involved in the sale or marketing of Alltrista products that refer or relate to any alleged direct, contributory or inducement to infringement of the '045 patent or infringement of

- 16 -

the Lifejacket trademark, any other act of alleged false advertising or unfair competition, or in any other way related in any manner to any aspect of the subject matter of this action.

60.     To the extent not already produced, produce any documents that refer or relate to communications by you or by any other person or entity, with any other person or entity regarding any alleged direct, contributory or inducement to infringement of the '045 patent or infringement of the Lifejacket trademark, any other act of alleged false advertising or unfair competition, or regarding licensing the '045 patent or licensing or use of the Lifejacket trademark.

61.     To the extent not already produced, produce all documents that refer or relate to any bid, quote, or sale of the Lifejacket system or any other Galvanic Jacket Corrosion Protection system to any past, present, or prospective customer of Alltrista.

62.     To the extent not already produced, produce all documents that refer or relate to any agreements, negotiations, or discussions between Alltrista and any other person or entity, including, without limitation, Florida DOT, involving the '045 patent.

63.     To the extent not already produced, produce all documents that refer or relate to any payments between, by or on behalf of either you or Alltrista or Florida DOT, relating to the subject matter of this action, including but not limited to any distribution, representation or employment agreement between you and either Alltrista or Florida

- 17 -

DOT or Douglas L. Leng, or any assignment, license or other agreement relating to the '045 patent or the Lifejacket Corrosion Protection System.

64.     To the extent not already produced, produce all documents that refer or relate to the use of penny web zinc sheets or meshes for corrosion protection systems.

65.     To the extent not already produced, produce all documents that refer or relate to any technical papers or any publications of any data relating to Galvanic Corrosion Protection systems or any components thereof.

66.     To the extent not already produced, produce all documents that refer or relate to any Galvanic Corrosion Protection Systems, or any components thereof, including, without limitation, all designs, proposals, sales or promotional documents or correspondence, agreements, licenses, tests, evaluation, analysis, or review of such systems or components.

- 18 -